# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **DAVID DENVER PARSONS** | § | **PLAINTIFF** |
| | § | |
| v. | § | **CAUSE NO. 1:09CV352 LG-RHW** |
| | § | |
| **PEARL RIVER COUNTY, MISSISSIPPI,** | § | |
| **ET AL.** | § | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Motion [108, 116] to Dismiss or for Summary Judgment filed by Southern Health Partners, Inc. The Plaintiff has responded with argument and evidence. Southern has replied. After due consideration of the submissions and the relevant law, it is the Court's opinion that Southern has shown there is no question of material fact for the jury in regard to Plaintiff's civil rights claims. However, questions of material fact exist as to the state-law claims. Accordingly, Southern's summary judgment motion will be granted in part and denied in part.

### PLAINTIFF'S ALLEGATIONS

Plaintiff David Parsons was arrested in May 2007. After a brief stay at the Harrison County Adult Detention Center, he was moved to the Pearl River County Jail. He alleges that while a pretrial detainee, he made repeated requests for shoes but Pearl River forced him to walk around the facility with only socks until June 18, 2007. He alleges that as a result, he developed lesions and ulcers on the sole of his right foot. He alleges that the Defendants did not respond to his requests for medical attention. He also claims that he received certain medical attention, consisting of "a bandage, changed infrequently, antibiotic ointment applied on rare occasions to the ulcerations, and ibuprophen." Compl. 5 (¶24). He alleges that his leg had begun to smell

rancid in September 2007, and he was finally brought to Forrest General Hospital where the leg was amputated. After his release from the hospital, he alleges that employees of Pearl River County Jail and its medical services contractor, Southern, did not allow him to take the medications prescribed by the hospital physicians.

As against Southern, the medical services contractor for the Pearl River County Jail, Parsons brings claims for deliberate indifference to his medical needs pursuant to 42 U.S.C. § 1983, conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985 and 1986, and state-law claims of medical negligence and gross negligence.

## DISCUSSION

*Section 1983 Claims*:

It is important to note at the outset that Southern is the last remaining defendant in this case. There are no clams remaining against individual Southern officers or agents. It is well established that a governmental entity (and by extension, Southern) generally is not liable for the actions of its agents, unless the agents' actions were pursuant to an express or tacit policy of the entity, and therefore, under color of state law. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978). A governmental entity may be held liable under § 1983 only when a constitutional deprivation is caused by the execution of a policy or custom of the entity. *Id*.

Regardless of any policy or custom, for the Court to find that Southern may be held liable for Parsons' § 1983 claim he must establish that a violation of his constitutional rights occurred. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the

point."). Parsons' § 1983 claim fails, because he cannot establish a violation of a constitutional right.

"The State's exercise of its power to hold detainees and prisoners [] brings with it a responsibility under the U.S. Constitution to tend to the essentials of their well-being." *Hare v. City of Corinth*, 74 F.3d 633, 638-39 (5th Cir. 1996) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989)). The constitutional rights of a convicted prisoner stem from the Eighth Amendment's prohibition on cruel and unusual punishment, while the analogous rights of a pretrial detainee arise under the due process guarantees of the Fourteenth Amendment. *Hare*, 74 F.3d at 639. "Negligent inaction by a jail officer does not violate the due process rights of a person lawfully held in custody of the State." *Id*. at 645. Instead, a pretrial detainee must demonstrate that "the official acted or failed to act with deliberate indifference to the detainee's needs." *Id*. at 648; *See also Farmer v. Brennan*, 511 U.S. 825 (1994). When the "need" at issue is the detainee's medical care, "[d]eliberate indifference exists wholly independent of an optimal standard of care." *Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006). The question is whether Southern purposefully neglected Parsons' medical needs. *Id*. The Court must examine the evidence provided to determine if it creates a question of material fact regarding purposeful neglect of Parsons' medical needs.

According to Pearl River County Jail records, Parsons received a medical screening from Southern on May 4, 2007, the day after he arrived at Pearl River. He informed Southern that he had been treated for diabetes and neuropathy, was taking prescription drugs, and was on a diabetic diet. Ct. R. 108-10 p.2. A Nurse Practitioner tested Parsons' urine and prescribed a diabetes drug, Metformin. *Id*. at 8-9. Approximately one month later, on June 3, 2007, Parsons

requested medical treatment for his right foot, which was swollen and red. *Id*. at 7. He was seen the same day. His vital signs were taken, he was given a prescription for ibuprophen, and was referred to the Nurse Practitioner. *Id*. The Nurse Practitioner found a small ulcer on Parsons' right middle toe. She ordered two oral antibiotics, daily wet to dry dressing changes to the wound, and continuing blood sugar monitoring. *Id*. at 10, 13. Medical records show that Parsons was seen for medical complaints on June 7, 14, and 24, July 2, 10, and 16, August 2, 10, 16, and 28, September 13, 15, and 22, and October 6, 2007. The medical records show Southern personnel continuing their course of cleaning the wound daily until the wound healed in late June. *Id*. at 28. However, by July 7, the wound had reappeared and the daily cleanings recommenced. *Id*. at 29. In late August, Dr. Gipson advised the Southern nurse to refer Parsons to a general surgeon. *Id*. at 14.

Southern provides the affidavit of Dr. Melancon, an orthopaedic surgeon who saw Parsons on September 6, 2007 to evaluate his foot ulcer. Ct. R.108-3. Dr. Melancon sets out the course of his treatment of Parsons, beginning with his initial evaluation:

> Mr. Parsons informed me that he had been a diabetic for most of his life and had a long history of diabetic peripheral neuropathy and prior problems with diabetic foot ulcers on his feet. This had included a partial amputation of his right foot in 2006. He told me he believed the diabetic foot ulcer that he came to see me for resulted from him not having shoes at the jail and walking barefoot on the floor.
>
> I examined Mr. Parsons' right foot and his foot ulcer. It appeared to be clean and it appeared that proper attention had been provided to it. . . . It was my opinion and continues to be my opinion now, to a reasonable degree of medical probability, that Mr. Parsons' diabetic foot ulcer was a result of his long term diabetes and peripheral neuropathy and was not related to his shoes or other circumstances involved in his incarceration. The wound he had was clean and he had been receiving treatment for it, but it was also consistent with the type of wound one expects to see in a patient with Mr. Parsons' long term medical

conditions.

> . . . I discussed with him that we could continue to treat the wound conservatively with antibiotics and debridement, but that he would continue to have problems with diabetic ulcers on that foot as he had in the past and that eventually he would require amputation.

*Id*. at 2-3.

Parsons and Dr. Melancon decided to proceed with antibiotic treatment. *Id*. at 3. Dr. Melancon prescribed a 14-day course of an oral antibiotic, but permitted substitution of a comparable drug. He noted that the jail's choice for an antibiotic substitute was appropriate. *Id*. In addition, Dr. Melancon prescribed Sugardyne solution for the wound and gave Parsons a boot to wear to protect the foot. *Id.* He also noted that the electronic medical records system generated some errors in Parsons' record. Most importantly, he did not order an IV antibiotic for Parsons, contrary to the reference to Vancomycin in Parsons' record. *Id*. at 3-4. He believed the oral antibiotic was sufficient. *Id*. at 4.

On September 22, Southern personnel noticed a deterioration in Parsons' wound and called Dr. Gipson, who ordered that he be transferred to Highlands Community Hospital in Picayune. After four days of treatment at Highlands, Parsons was taken to Dr. Melancon's office. Parsons was then admitted to Forrest General Hospital for an elective below-knee amputation.

Parsons argues that 1) Southern was deliberately indifferent to his medical needs because he should have received IV, rather than oral, antibiotics, and 2) he should have been examined earlier by an outside physician. As the Fifth Circuit has cautioned, the deliberate indifference standard is independent of the optimal standard of care. *Gobert*, 463 F.3d at 349. Contentions

like Parsons' that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered). The evidence regarding Parsons' treatment recounted above reveals no question of material fact for the jury regarding whether Southern purposefully neglected Parsons' medical needs. Clearly, Southern was not purposefully neglectful. They attended to his medical condition and followed a course of treatment.

As Parsons is unable to show a constitutional violation, it is unnecessary to examine evidence of Southern's policies and customs. *Heller*, 475 U.S. at 799. Southern is entitled to summary judgment in regard to Parsons' § 1983 claims.

*Section 1985 and 1986 Claims*

Plaintiff agrees that his § 1985 and 1986 claims against Southern should be dismissed. Accordingly, Southern is entitled to judgment as a matter of law in regard to Parsons' § 1985 and 1986 claims.

*Medical Malpractice/Negligence*

As noted earlier, there are no individual defendants left in this case. Parsons' medical malpractice claim is solely against Southern. Southern argues that the claim fails as a matter of law due to the lack of competent expert causation testimony. Parsons responds that his medical expert witnesses's opinion and affidavit are sufficient to demonstrate causation.

In order to prevail on his medical malpractice claim, Parsons must prove: (1) the standard

of care, (2) breach of the standard of care, (3) causal connection between the breach and the injury, and (4) the extent of the plaintiff's damages. *Johnson v. Burns-Tutor*, 925 So. 2d 155, 158 (Miss. Ct. App. 2006) (citing *McCaffrey v. Puckett*, 784 So. 2d 197, 206 (¶ 33) (Miss. 2001)). "When proving these elements in a medical malpractice suit, expert testimony must be used." *Barner v. Gorman*, 605 So. 2d 805, 809 (Miss. 1992) (citing *Latham v. Hayes*, 495 So. 2d 453, 459-60 (Miss. 1986)). "Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *Id.*

Parsons has designated a medical expert, Dr. William Durham. *See* Ct. R. 34-2. Dr. Durham noted that Parsons' initial exam showed him to be free from wounds on his right foot. In addition, Parsons informed them of his diabetes and previous surgery to remove a portion of his foot. Thus, Southern had knowledge of Parsons' susceptibility to diabetes-related complications. Dr. Durham opines that the "proper and standard medical treatment and approach to this exact illness in the same patient" Southern should have followed is set out in a medical note by Parsons' previous physician in Southern's medical file. (Dr. Durham Aff. Ex. A at 4). Dr. Durham lists a number of deviations from the standard of care. Although not explicitly stated, it can be inferred from his report that his opinion is that these deviations caused Parsons to lose his lower leg. In particular, after recounting Southern's alleged breaches in the standard of care, Dr. Durham opines, "it was now too late to achieve any realistic healing and save Mr. Parsons['] lower extremity." *Id.* at 3. In the Court's view, this is sufficient to establish a *prima facie* case of medical malpractice under Mississippi law. Further, in Dr. Durham's affidavit, he states that Southern's breaches of the standard of care "proximately caused or contributed to

cause Mr. Parsons to develop active osteomyelitis in his right foot and for it to go undiagnosed and improperly treated until it was too late to avoid amputating his right leg below the knee in September 2007, " and that these breaches were "each a proximate cause of the resulting amputation of Mr. Parsons['] lower extremity."  (Dr. Durham Aff. at 2-3 (¶¶4-5)) .

Southern argues that its expert medical testimony contradicts Dr. Durham's opinion and is more worthy of credence, but that factual dispute cannot be resolved on summary judgment. Accordingly, Southern's motion will be denied as to Parsons' medical malpractice/negligence claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [108, 116] to Dismiss or for Summary Judgment filed by Southern Health Partners, Inc. is **GRANTED** as to Plaintiff's claims pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 and **DENIED** in all other respects.

**SO ORDERED AND ADJUDGED** this the 23th day of July, 2010.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE